Eastern District of Kentucky
**FILED**

JAN 19 2007

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CASE NO. 06-CV-240-JMH

THEODORE HOWZE, JR.                                                    PETITIONER

VS:                          **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT                                                    RESPONDENT

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

Theodore Howze, Jr. ("Howze") is a prisoner incarcerated at the Federal Medical Center in Lexington, Kentucky ("F.M.C.-Lexington"), who has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 [Record No. 1]. This matter is before the Court for screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, \*1 (6th Cir. 2002).

As Howze is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

I.      **Background**

On July 19, 1993, Howze was sentenced to a term of incarceration for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §846. On November 22, 1996, Howze was released from custody to begin a 5-year term of supervised release. *United States v. Howze*, 92-CR-30, Western District of North Carolina.

On October 15, 1998, during his term of supervised release, Howze was arrested by local police in Charlotte, North Carolina, for trafficking in cocaine. On December 18, 1998, Howze was arrested by federal officials and charged with federal offenses arising out of same conduct. On February 25, 1999, pursuant to a written plea agreement with the United States, Howze pled guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. §841(a)(1) and aiding and abetting in violation of 18 U.S.C. §2. As part of the plea agreement, Howze agreed to provide assistance and testimony in another pending criminal matter, *United States v. Rhynes*, in exchange for the government's motion for a downward departure from a mandatory life sentence to a 240-month term of incarceration.

Because Howze had violated the terms of supervised release by committing new criminal conduct, his supervised release in 92-CR-30 was revoked and on July 29, 1999, he was sentenced to a 57-month term of incarceration. Howze's sentencing in 98-CR-299 was delayed nearly four years until the prosecution in *Rhynes* was completed and Howze's cooperation could be assessed. On April 1, 2003, because Howze had cooperated and assisted in *Rhynes*, during his sentencing hearing in 98-CR-299 the United States moved for a 240-month term of incarceration in accordance with the plea agreement. The trial court granted that request and sentenced Howze to that term. The court further granted Howze's oral request that his sentence run concurrently with his sentence in 92-CR-30.

On April 5, 2004, Howze filed a motion to vacate his conviction and sentence under 28 U.S.C. §2255 on the ground that his trial counsel's failure to file an appeal upon his request to do so constituted *per se* ineffective assistance of counsel. On December 20, 2004, while noting that Howze's counsel denied that Howze had made any request for an appeal, the trial court

-2-

granted the motion, vacated his prior conviction, and entered a new judgment of conviction to permit Howze to file an appeal.   On January 20, 2005, Howze appealed his conviction and sentence to the Court of Appeals for the Fourth Circuit, claiming ineffective assistance of counsel and *Booker* violations.   Howze also asserted the same argument he presents here:   that by ordering Howze's two criminal sentences to run concurrently, the trial court intended that his sentence in 98-CR-299 commence retroactive to the commencement of the 57-month term on his supervised release revocation.   On May 5, 2006, the Fourth Circuit entered its opinion rejecting Howze's arguments, in particular noting that his sentencing argument would conflict with 18 U.S.C. §3585, and affirmed his conviction and sentence.

On May 24, 2006, Howze filed a motion in 98-CR-299 requesting a clarification on his sentence, again arguing that the trial court must have intended his sentence in 98-CR-299 to commence not on April 1, 2003, the date it was imposed, but on July 29, 1999, the date his 57-month sentence in 92-CR-30 commenced.   On June 13, 2006, the trial court denied Howze's motion without prejudice to raise his arguments in a petition for a writ of habeas corpus under 28 U.S.C. §2241.   The trial court noted in passing that, in response to his equitable arguments, Howze had not been prejudiced by the four-year delay in sentencing, as such delay permitted Howze the opportunity to assist the United States, which resulted in a dramatic reduction in his sentence.   *United States v. Howze*, 98-CR-299, Western District of North Carolina [Record Nos. 5, 14, 15, 22-26, 36, 37, 40 therein].

In his present petition, Howze again asserts that the trial judge in 98-CR-299 intended his sentence to retroactively commence on July 29, 1999, and that such a sentence is permitted under Sentencing Guideline 5G1.3(b).

## II.    Discussion

In support of his petition, Howze places primary reliance upon the Third Circuit's decision in *Ruggiano v. Reish*, 307 F.3d 121 (3rd Cir. 2002). In that case, Ruggiano was still serving a New York sentence for gambling when he was sentenced in federal court on racketeering charges arising out of unrelated conduct. Consistent with his comments at the sentencing hearing, the judge entered a judgment and commitment order providing that Ruggiano's sentence was "to run concurrent with State sentence. Defendant to receive credit for time served." The Bureau of Prisons ("BOP") computed his federal sentence as concurrent with his state sentence, but only commencing when it took custody of him, thus not crediting time served on his state sentence to his federal sentence. Ruggiano filed a petition for writ of habeas corpus under Section 2241, which was denied by the district court. *Id.* at 124.

The Third Circuit reversed on appeal. The panel first held that 18 U.S.C. §3584 and Sentencing Guideline 5G1.3 authorized the sentencing court to, in effect, credit a defendant's time served on an unrelated state charge prior to sentencing on the federal charge without the need to make the findings necessary to justify a downward departure. Sentencing Guideline 5G1.3 provides:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

-4-

(c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

Subsection (a) did not apply because the federal offense was not committed while Ruggiano was in custody on the state offense, and subsection (b) did not apply because both offenses did not arise out of the same conduct. Accordingly, the court was not constrained to order that the sentences be served consecutively or concurrently, but had discretion under subsection (c) to do either. Existing Third Circuit precedent provided that a sentencing court is authorized to "adjust" a sentence to account for time served on unrelated state sentence under Guideline 5G1.3(c). *United States v. Brannan*, 74 F.3d 448, 452 n.6 (3rd Cir. 1996).

The Third Circuit further concluded that Application Note 2 to Section 5G1.3 made clear that the term "concurrent" as used in subsection (b) meant concurrent not merely with the remainder of the pre-existing sentence, but "retroactively" concurrent with the full pre-existing sentence, *i.e.*, commencing on the same date as the pre-existing sentence. The *Ruggiano* Court determined that as a matter of statutory interpretation, the meaning of the identical term "concurrent" used in subsection (c) should be given the same "retroactive" meaning described by Note 2 for subsection (b). *Ruggiano*, 307 F.3d at 130. Because the sentencing court had directed the BOP to give Ruggiano "credit for time served" in state custody and Guideline 5G1.3(c) granted authority for it to do so, the Third Circuit granted habeas relief and directed the BOP to calculate Ruggiano's sentence accordingly.

The Court further held that 18 U.S.C. §3585(b), which gives the BOP exclusive authority to give "credit for time served," did not bar the sentencing court from doing so under Guideline 5G1.3(c), because the "credit" or "adjustment" given by the sentencing court was not the same

-5-

kind of "credit" determined by the BOP. *Id.* at 132.  Finally, the Third Circuit held that the sentencing judge's comments from the bench and written judgment referring not merely to the judgment being "concurrent," but also to giving "credit for time served," evidenced his clear intent that the subsequent federal sentence be "retroactively" concurrent to the commencement of the petitioner's pre-existing sentence. *Id.* at 133-34.

The Court must reject Howze's initial contention that his sentencing was governed by Guideline 5G1.3(b).  Howze asserts that both the undischarged sentence imposed upon revocation of his supervised release in 92-CR-30 and the sentence imposed for the instant offense in 98-CR-299 were the result of the same conduct, his October 1999 arrest for trafficking in cocaine.  As the Second Circuit noted in *United States v. Fermin*, 252 F.3d 102 (2nd Cir. 2001), the "conduct" giving rise to the sentence imposed upon revocation of supervised release is not the event or conduct which violated the terms of the supervised release, but the conduct giving rise to the underlying conviction. *Id.* at 108 ("[5G1.3(b)] does not apply because 'when a criminal defendant is imprisoned as a result of his violation of the terms of his parole, the 'offense' that 'results' in his imprisonment is, for the purposes of § 5G1.3(b), the underlying prior offense of conviction, not the conduct violative of his parole conditions.", *citing United States v. Garcia-Hernandez*, 237 F.3d 105, 110 (2nd Cir. 2000)).

In its opinion, the Third Circuit in *Ruggiano* acknowledged that the Second and perhaps Eleventh Circuits had reached the opposite conclusion:  Guideline 5G1.3(c) does not authorize a sentencing court to "credit" a defendant for time served on an unrelated pre-existing conviction. *United States v. Fermin*, 252 F.3d 102, 106-10 (2nd Cir. 2001) (as matter of statutory interpretation and practical application, Application Note 2 applies only to Guideline 5G1.3(b)

-6-

determinations; Guideline 5G1.3(c) determinations are governed by Application Notes 3, 4, and 5); *United States v. Johnson*, 87 F.3d 1257 (11th Cir. 1996).

Of course, precedent from other circuits is not binding upon courts in the Sixth Circuit-- it is at most persuasive authority. While the Sixth Circuit does not appear to have addressed this question squarely, what circuit precedent does exist strongly indicates that the Sixth Circuit would reject the Third Circuit's holding in *Ruggiano* and concur with the Second Circuit's reasoning in *Fermin*.

Central to each of these conflicting decisions was a determination whether Application Note 2 applies not only to Guideline 5G1.3(b), but to Guideline 5G1.3(c) as well. As did the Second Circuit in *Fermin*, the Sixth Circuit has concluded that Application Note 2 "... applies expressly and exclusively to subsection (b)." *United States v. Reed*, 2001 WL 1487921, *1 (6th Cir. 2001) (unpublished disposition). Absent Application Note 2's gloss on the meaning of "concurrent" under Guideline 5G1.3(b), that term as used in Guideline 5G1.3(c) means concurrent with only "the remainder of the defendant's undischarged sentence." *Ruggiano*, 307 F.3d at 128.

Further, in determining that the sentencing court possessed the authority under Guideline 5G1.3(c) to "back-date" the commencement of the defendant's federal sentence by having it commence on the same date as his pre-existing conviction, the Third Circuit rejected the BOP's argument that 18 U.S.C. §3585 precluded that result. Section 3585(a) gives the BOP the exclusive authority to determine when a defendant's sentence "commences"; Section 3585(b) gives the BOP the exclusive authority to calculate any credit to be given the defendant for time already served. The Third Circuit held that the sentencing court's "adjustment" under 5G1.3(c) was not a "credit" calculation vested exclusively with the BOP. *Ruggiano*, 307 F.3d at 132. The

-7-

Sixth Circuit, however, has held that any attempt to "adjust" the commencement date of the federal sentence would violate Section 3585(a). *Doan v. Lamanna*, 2001 WL 1299260 (6th Cir. 2001) (unpublished disposition) ("Doan apparently argues that the Georgia sentence should have been run concurrently with the entire 51-month term of the [pre-existing] Florida sentence. However, under §3585(a), a sentence to a term of imprisonment begins on the date the defendant is received into custody. Consequently, his Georgia sentence could not begin to run until after his sentencing in October 1998."); *United States v. Wells*, 2007 WL 51483, *4 (6th Cir. 2007) (unpublished disposition) ("[B]ecause Wells was not in custody awaiting transport to a federal prison on the date his sentence was imposed [under 18 U.S.C. §3585(a)], the district judge had no statutory authority to order that the defendant's federal sentence should 'commence' on that date.")

Finally, even if the Sixth Circuit were to agree with the Third Circuit's holding in *Ruggiano*, the record does not provide adequate evidence that the sentencing court intended to give Howze "credit for time served." At the end of the sentencing hearing, upon prompting from Howze's counsel, the sentencing court clearly ordered Howze's sentence in 98-CR-299 to run concurrently with the sentence Howze was already serving in 92-CR-30. But as noted above, in general parlance and in accord with established Sixth Circuit precedent, that direction merely meant concurrent with "the remainder of the defendant's undischarged sentence." In *Ruggiano*, while the sentencing court clearly indicated that the two sentences were to run concurrently, the Third Circuit relied heavily upon the sentencing court's further pronouncement, orally and in the judgment and commitment order, that the defendant was also to receive "credit for time served" as an expression of its intent to adjust his sentence downward to account for the pre-existing sentence. *Ruggiano*, 307 F.3d at 131-32. There was no such indication from the court at

-8-

Howze's sentencing hearing, and hence this Court has no basis to conclude that such a departure was intended. In addition, the sentencing court's statements in its June 13, 2006 order denying Howze's motion to clarify his sentence suggest, if anything, its belief that Howze's sentence, as calculated by the BOP, fully and adequately reflects the intended benefit Howze was to receive through his cooperation with the United States. There is simply insufficient evidence to suggest that Howze would be entitled to habeas relief even if the Sixth Circuit were to follow *Ruggiano*.

## III. CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)     Petitioner Howze's motion to amend/correct petition is **GRANTED.**

(2)     Petitioner Howze's petition for a writ of habeas corpus is **DENIED.**

(3)     The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. §915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

(4)     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This the ___14th___ day of January, 2007.

JOSEPH M. HOOD, CHIEF JUDGE

-9-